UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DONNA MCCAIN,** | ) |
| *Plaintiff,* | ) |
| v. | ) Case No. 1:20-cv-03332-ACR |
| **BARBARA BAZRON,** | ) |
| *Defendant.* | ) |

## MEMORANDUM OPINION AND ORDER

On August 22, 2019, Dr. Raja Mathur approached a colleague, Plaintiff Donna McCain, at a public workstation and asked for a patient file. She replied that she did not have it. The next nine seconds underpins this federal lawsuit. According to Plaintiff, Dr. Mathur "instructed [her] to relax and then rubbed her back in a manner that made Plaintiff uncomfortable" and was "of a sexual nature." Dkt. 18-1 at ¶ 5. According to Defendant and video footage, Dr. Mathur next "patted Plaintiff on her right shoulder for three seconds, stopping for two seconds, and then patting her again for four more seconds." *Id.*

Largely based on this interaction, Plaintiff has sued her employer, the District of Columbia Department of Behavioral Health, Comprehensive Psychiatric Emergency Program (CPEP). She alleges violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the District of Columbia Human Rights Act, D.C. Code § 2-1401 et seq. Defendant has moved for summary judgment on the premise that, even accepting Plaintiff's version that Dr. Mathur rubbed—instead of patted—her back, that conduct cannot support a hostile work environment claim. Dkt. 16-1 at 4–8.

1

The Court agrees with Defendant and GRANTS its Motion for Summary Judgment. Dr. Mathur had unwanted physical contact with Plaintiff, yes. But no reasonable juror could conclude that his contact was so egregious as to create a hostile work environment.

## FACTUAL BACKGROUND

Plaintiff works as a medical administrative assistant for CPEP. Dkt. 18-1 at ¶ 1. She sits at the intake room's front desk, which is accessible to other employees. *Id.* at ¶¶ 2–3.

On August 22, 2019, Dr. Raja Mathur, a general medical officer for DBH, approached Plaintiff's workstation and asked for information about a patient. *Id.* at ¶ 4. Plaintiff either said, or yelled, in response, "I don't have it." *Id*. According to Plaintiff, Dr. Mathur next "instructed [her] to relax and then rubbed her back in a manner that made Plaintiff uncomfortable" and was "of a sexual nature." *Id.* at ¶ 5. According to Defendant, Dr. Mathur next "patted Plaintiff on her right shoulder for three seconds, stopping for two seconds, and then patting her again for four more seconds." *Id.*[1] Immediately after Dr. Mathur touched her, Plaintiff, "visibly upset, told a co-worker that Dr. Mathur had inappropriately touched her back and needed to take a break from work to collect herself." *Id*. at ¶ 15. Surveillance video captured the exchange; Plaintiff claims the video is "inconclusive." *Id*. at ¶ 7.

Plaintiff reported the incident to her immediate supervisor, Tamara Burke, DBH Deputy Director Jonathan Ward, and DBH Human Resources, the next day. *Id.* at ¶ 6. DBH Equal Employment Opportunity Officer Lisa Tapp determined that Dr. Mathur did not sexually harass Plaintiff. *Id*. at ¶ 7. Officer Tap interviewed Plaintiff, a third-party witness to the August incident, and Dr. Mathur. She analyzed the interviews, emails Plaintiff provided, an events

---

[1] For present purposes, the Court presents disputed evidence in the light most favorable Plaintiff. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

timeline, and the video footage of the event in the context of applicable laws, regulations, and policies. *See* Dkt. 16-4 at 34–43. She then issued a ten-page memorandum to the Director of Human Resources laying out her findings and conclusions. *Id.*

Plaintiff ran into Dr. Mathur three more times. She perceived these later encounters to be hostile because he "leered" at her and "followed her into the area of the bathroom." Dkt. 18-1 at ¶ 10.[2] She admits that Dr. Mathur did not touch her or communicate with her during these other encounters, and she did not report any of them to a supervisor. *Id.* at ¶ 8. She did, however, request a transfer to a different shift. *Id.* at ¶ 10. Defendant denied her request for transfer because no other positions were available. *Id.* at ¶ 12.

## LEGAL STANDARD

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harrison v. Off. of Architect of Capitol*, 985 F. Supp. 2d 13, 19 (D.D.C. 2013), *adhered to on denial of reconsideration*, 69 F. Supp. 3d 60 (D.D.C. 2014), *aff'd*, No. 14-5288, 2015 WL 6472167 (D.C. Cir. July 16, 2015). A "genuine issue" is one whose resolution could establish an element of a claim or defense and so affect the outcome of the action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). In essence, a court must

---

[2] Plaintiff does not identify these incidents in her Counter-Statement of Facts. Dkt. 18-1. At her deposition, she identified the incidents as follows: (1) in September 2019, Plaintiff came back to her desk after a break, and noticed Dr. Mathur leaning against the window, Dkt. 16-4 at 8; (2) on November 14, 2019, Plaintiff encountered Dr. Mathur in the hallway on her way to use the restroom, she walked into the restroom, called a nurse to ask Dr. Mathur to leave the hallway, and he refused to do so, *id.* at 12–13; and (3) in January 2020, Dr. Mathur watched Plaintiff enter a property room, entered the same room, and then left the property room once he saw Plaintiff there with another employee, *id.* at 9.

decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The moving party has the burden of demonstrating that there is no genuine issue of material fact. *See Harrison*, 985 F. Supp. 2d at 19 (citing *Celetex*, 477 U.S. at 322). But the mere existence of a factual dispute cannot defeat summary judgment. *See id.* (citing *Anderson*, 477 U.S. at 248). For a dispute about a material fact to be "genuine," there must be enough admissible evidence for a reasonable trier of fact to rule for the nonmoving party. *Id.* "Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute." *Id.*

## ANALYSIS

Plaintiff's opposition hinges on her claim that "Dr. Mathur's single incident of unwanted touching changed [her] work conditions." Dkt. 18 at 4. Perhaps for her it did. But neither Title VII nor the District of Columbia Human Rights Act use a subjective test only.[3] Instead, a hostile work environment is "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Even accepting Plaintiff's version of events as true—and ignoring the video footage confirming Defendant's version[4]—no reasonable person could conclude that a colleague rubbing a person's back for a matter of seconds creates a hostile work environment. Were this Court to

---

[3] The burden to show a hostile work environment is the same under Title VII and the Human Rights Act. *See Psychiatric Inst. v. District of Columbia Comm'n on Hum. Rts.*, 871 A.2d 1146, 1151 n.2 (D.C. 2005).

[4] The video footage belies any notion that Dr. Mathur's touch was "rubbing" or "sexual in nature." *See* Dkt. 16-4 (Video); Dkt. 18-1 ¶ 5. But the Court's opinion accepts Plaintiff's version.

find otherwise, Defendant still could not be held vicariously liable because Plaintiff provides no evidence that Defendant failed to take remedial action even though it knew or should have known about Dr. Mathur's conduct.

## I.     The Hostile Work Environment Claim Fails

Workplace harassment violates Title VII if "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., Concurring)).  That said, Title VII is not a "general civility code." *Faragher*, 524 U.S. at 788.  The challenged "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*.  Employers are not liable for "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id*.

Actionable conduct must create an "objectively hostile" work environment. *Harris*, 510 U.S. at 21.  "[T]o determine whether an environment is sufficiently intimidating, hostile, or offensive," to justify a Title VII claim, courts "[look] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . . [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not suffice. *Faragher*, 524 U.S. at 787–88 (quotations omitted).

### A. The Initial Incident

To be sure, "a single physical act — such as a physical assault — can create a hostile work environment" if particularly serious. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (collecting cases).

Rubbing a person's back for a matter of seconds is not egregious. A comparison of that physical contact to the acts in cases Plaintiff cites, Dkt. 18 at 3–4, underscores the point. In *Turnbull v. Topeka State Hosp.*, the Tenth Circuit reversed judgment as a matter of law for a state psychiatric hospital in a Title VII suit brough by one of its doctors. 255 F.3d 1238, 1245 (10th Cir. 2001). A patient had "attacked [the plaintiff,] knocked her to the ground, undressed her and digitally penetrated her, bit and choked her, and repeatedly threatened to kill her." *Id.* at 1242–43. Although "there was only one incident, . . . it was objectively abusive, dangerous, and humiliating, and [the plaintiff] was so traumatized she was unable to return to work thereafter." *Id.* at 1243–44. In *Smith v. Sheahan*, the Seventh Circuit reversed a lower court's grant of summary judgment where a male colleague "called [the plaintiff] a 'bitch,' threatened to 'fuck [her] up,' pinned her against a wall, and twisted her wrist severely enough to damage her ligaments, draw blood, and eventually require surgical correction." 189 F.3d 529, 531, 533 (7th Cir. 1999). In *Tomka v. Seiler Corp.* the Second Circuit reversed the lower court's grant of summary judgment where the plaintiff was gang raped by three male colleagues following eighteen months of verbal harassment. 66 F.3d 1295, 1300, 1302, 1305, 1307, 1318 (2d Cir. 1995).

On the other hand, courts routinely find that non-violent physical contact—the type alleged here—does not create a hostile work environment. In *Carter v. Greenspan*, for instance, this Court found no hostile work environment where a co-worker caressed the plaintiff's knee,

6

placed her breast on his arm, and placed her fingers on his buttocks. 304 F. Supp. 2d 13, 25 (D.D.C. 2004).  The Seventh Circuit reached the same conclusion in *Hilt-Dyson v. City of Chicago* where a supervisor twice rubbed the plaintiff's back and shoulders and stared at her inappropriately.  282 F.3d 456, 463–64 (7th Cir. 2002).  Likewise, in *Valentine-Johnson v. Roche* the Eastern District of Michigan found no "severe and pervasive" harassment where a supervisor put his arm around the plaintiff without her consent and stood too close to her.  238 F. Supp. 2d 911, 917 (E.D. Mich. 2003).

### B. Later Incidents

Plaintiff focuses her opposition on the August 22, 2019, incident.  In passing, she mentions three later encounters—in which Dr. Mathur leered at her, was outside a restroom and entered a room she had entered then left—and her request for a transfer.  Dkt. 18 at 3–4.  She does not, however, argue that they add to her hostile work environment claim.  Even taking them into account, Plaintiff cannot defeat summary judgment.

The incidents were infrequent and sporadic.  Other than the initial incident, Dr. Mathur never spoke to Plaintiff nor touched her again.  The incidents then do not permeate the workplace with "discriminatory intimidation, ridicule, and insult" and cannot support a hostile work environment claim.  *Akonji v. Unity Healthcare Inc.*, 517 F. Supp. 2d 83, 96 (D.D.C. 2007).  *Akonji* is instructive.  There this Court held that "five discrete acts over [a] two-year period as well as infrequent inappropriate comments and staring . . . do not reach the level of . . . conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination."  *Id.* at 98–99.  Other courts have engaged in the same reasoning.  *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding that five humiliating instances over four years "were too few, too separate in time, and too mild . . . to create an abusive working

environment."); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 64, 77–78 (D.D.C. 2013) (finding that many inappropriate comments and a single incidence of unwelcome physical contact over at least five months were not sufficiently "severe and pervasive.").

## II. Defendant is Not Vicariously Liable

The Court also dismisses on an independent ground. Even if Dr. Mathur's conduct created a hostile work environment, Defendant is not vicariously liable. An employer is only liable for harassment by "non-supervisory co-workers" when "the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Bergbauer*, 934 F. Supp. 2d at 72 (quoting *Petrosino v. Bell Atl.,* 385 F.3d 210, 225 (2d Cir. 2004)).

Plaintiff reported the back-rubbing incident to her immediate supervisor, who in turn ordered an investigation conducted by Officer Tap. Dkt. 18-1 at ¶¶ 6–7. Defendant's evidence shows that Officer Tap investigated Plaintiff's allegation and issued a thorough investigatory report. She concluded that Dr. Mathur had not sexually harassed Plaintiff. Plaintiff alleges that Officer Tap, "simply took Dr. Mathur at [his] word." *Id* at ¶ 7. But a plaintiff cannot create a genuine material issue of fact on her mere say-so. *Baylor v. Powell*, 459 F. Supp. 3d 47, 53 (D.D.C. 2020), *aff'd*, 847 F. App'x 7 (D.C. Cir. 2021) (quoting *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016)). She must clearly dispute the movant's evidence and, if appropriate, present her own controverting evidence. *See id.* Plaintiff has done nothing to address, much less rebut, Defendant's evidence.

Plaintiff has not created a genuine issue of material fact as to the conduct of Defendant's investigation. And because Plaintiff did not report the later incidents, there is no evidence that

8

Defendant knew or should have known about them. *See* Dkt. 18-1 at ¶ 9. She therefore has failed to state a claim for vicarious liability.

## CONCLUSION

Upon consideration of Defendant's Motion for Summary Judgment, it is hereby ORDERED that Defendant's motion is GRANTED; and it is FURTHER ORDERED that this lawsuit is DISMISSED WITH PREJUDICE.

*This is a final and appealable order.* FED. R. APP. P. 4(a).

Dated:  June 2, 2023

                                                          ANA C. REYES
                                                          United States District Court Judge